In the Matter of the Petition of T.D. and his wife, J.D., to adopt N.T.K., and B.L.W., as mother and natural guardian of D.J.F., a minor, and D.J.F., individually, Appellants,

v.

A.K., as mother and natural guardian of J.M.K., a minor, and J.M.K., individually, Respondents.

No. A03–1207.

Court of Appeals of Minnesota.

April 6, 2004.

Sharon G. Benson, Benson Law Office, St. Cloud, for appellant D.J.F. and B.L.W.

Wright S. Walling, Walling & Berg, P.A., Minneapolis, for intervenors T.D. and J.D.

Amy S. Silberberg, Afton, for respondent A.K.

Daniel A. Tollefson, Neils, Franz and Chirhart, P.A., St. Cloud, for respondent J.M.K.

Considered and decided by LANSING, Presiding Judge; PETERSON, Judge; and FORSBERG, JUDGE.*

**OPINION**

PETERSON, Judge.

This appeal is from a judgment dismissing appellant's paternity action because appellant did not show that he had good cause for failing to initiate the action within 30 days after receiving notice to registered putative father. We affirm.

**FACTS**

During February 2002, appellant D.J.F. learned that respondent J.M.K. was pregnant and that he might be the father of the child. During August 2002, D.J.F. learned that J.M.K. was considering placing the child for adoption. The child, N.T.K., was born on October 14, 2002. On October 23, 2002, D.J.F. became aware that the child had been born, and on October 29, 2002, he registered with the father's adoption registry as a putative father [1].

On November 6, 2002, D.J.F. was served with a notice to registered putative father, an intent-to-claim-parental-rights form, a denial-of-paternity form, and a consent-to-adoption form as permitted under Minn. Stat. § 259.52, subd. 9 (2002). D.J.F. completed the intent-to-claim-parental-rights form and filed it with the court administrator for Stearns County on November 18, 2002, in accordance with Minn.Stat. § 259.52, subd. 10 (2002).

On December 27, 2002, respondents T.D. and J.D., the proposed adoptive parents, requested a pre-adoptive custody order with respect to N.T.K. On December 28, 2002, D.J.F. commenced a paternity action with respect to the child. On January 8, 2003, the district court granted T.D. and J.D. temporary pre-adoptive custody of the child.[2]

T.D. and J.D. moved to dismiss D.J.F.'s paternity action. Following a hearing, the district court consolidated D.J.F.'s paternity action and the adoption proceeding for N.T.K. The court found that based on the evidence before it, there was no good cause shown for extending the 30–day period during which D.J.F. was to initiate a paternity action pursuant to Minn.Stat. § 259.52, subd. 10. The court ordered that if D.J.F. desired an evidentiary hearing on the issue of good cause, he should

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. "Putative father" means a man who may be a child's father, but who:
 (1) is not married to the child's mother on or before the date that the child was or is to be born; and
 (2) has not established paternity of the child according to section 257.57 in a court proceeding before the filing of a petition for the adoption of the child.

"Putative father" includes a male who is less than 18 years old.
Minn.Stat. 259.21, subd. 12 (2002).

2. The child was in the custody of T.D. and J.D. for approximately two weeks during October 2002. At the beginning of November 2002, the child was returned to the custody of J.M.K. and remained in her custody until January 2003.

contact the court within 15 days of the order and schedule a hearing, and, if no hearing was scheduled, the paternity action shall be dismissed.

An attorney was appointed for D.J.F., and an evidentiary hearing on the issue of good cause was scheduled. Following the evidentiary hearing, the district court concluded that D.J.F. failed to meet his burden to prove that he had good cause for failing to commence his paternity action within the 30–day statutory period. Because there was no good cause shown for failing to commence the action within the 30–day period, the court dismissed the paternity action.

## ISSUE

Did the district court abuse its discretion when it concluded that D.J.F. failed to meet his burden to prove that he had good cause for failing to commence his paternity action within the 30–day statutory period?

## ANALYSIS

One of the statutory requirements that apply to adoption proceedings is that "[n]o child shall be adopted without the consent of the child's parents ... except ... [c]onsent shall not be required of a parent not entitled to notice of the [adoption] proceedings." Minn.Stat. § 259.24, subd. 1(a) (2002). A putative father can be a parent who is not entitled to notice of adoption proceedings.

Minn.Stat. § 259.49, subd. 1(b) (2002), contains eight clauses that describe who must be given notice of the hearing upon a petition to adopt a child. The last of these eight clauses applies to a putative father and requires notice if the putative father:

> (i) is not entitled to notice under [section 259.49, subdivision 1(b)] clauses (1) to (7);

> (ii) has registered with the fathers' adoption registry;

> (iii) after receiving a fathers' adoption registry notice, has timely filed an intent to retain parental rights with entry of appearance form under section 259.52; and

> (iv) within 30 days of receipt of the fathers' adoption registry notice has initiated a paternity action, unless, for good cause shown, he is unable to do so within the 30 days; a paternity action must be initiated by the putative father in district court; application to the public authority for paternity establishment services does not constitute initiation of an action.

Minn.Stat. § 259.49, subd. 1(b)(8) (2002). Under the plain language of this statute, a putative father who meets the requirements of the statute is entitled to notice of adoption proceedings even though he has not yet established that he is a parent of the child. But a putative father who does not meet the requirements of this statute, and who is not otherwise entitled to notice under section 259.49, subdivision 1, paragraph (a) or (b), clauses (1) to (7), is not entitled to notice of the adoption proceedings, and the child may be adopted without his consent even if he is a parent of the child.

The fathers' adoption registry was established

> for the purpose of determining the identity and location of a putative father interested in a minor child who is, or is expected to be, the subject of an adoption proceeding, in order to provide notice of the adoption proceeding to the putative father who is not otherwise entitled to notice under section 259.49, subdivision 1, paragraph (a) or (b), clauses (1) to (7).

Minn.Stat. § 259.52, subd. 1 (2002).

The statutory procedure for using the fathers' adoption registry includes a 30–

day period for a putative father to initiate a paternity action that is consistent with the 30–day period in Minn.Stat. § 259.49, subd. 1(b)(8)(iv). The fathers' adoption registry statute states:

> Within 30 days of receipt of the notice to registered putative father, the intent to claim parental rights form, the denial of paternity form, and the consent to adoption form, the putative father must file a completed intent to claim parental rights form with the court administrator in the county in which the adoption petition will be filed as provided by the petitioner, stating that he intends to initiate a paternity action within 30 days of receipt of the notice to registered putative father in order to preserve the right to maintain an interest in the child and receive notice during the pending adoption proceeding. Failure to initiate a paternity action within 30 days of receipt of the notice to registered putative father does not act as a bar to receiving notice under section 259.49. If good cause is shown, the putative father must be allowed more time to initiate the paternity action.

Minn.Stat. § 259.52, subd. 10 (2002).

On November 6, 2002, D.J.F. was served with a notice to registered putative father, an intent-to-claim-parental-rights form, a denial-of-paternity form, and a consent-to-adoption form. The parties do not dispute that D.J.F.: (1) is not entitled to notice of the adoption proceeding under section 259.49, subdivision 1(a) or (b)(1)-(7); (2) registered with the father's adoption registry; (3) timely filed an intent to retain parental rights; and (4) did not initiate a paternity action within 30 days after receiving the notice to registered putative father. Therefore, D.J.F. is not entitled to notice under section 259.49, subdivision 1(b)(8), unless he can show good cause why he was unable to initiate a paternity action within 30 days after he received the notice. If he cannot show good cause, D.J.F. is not entitled to notice of the hearing on the adoption petition, and, under Minn.Stat. § 259.24, subd. 1(a) (2002), his consent to the adoption is not required even if he is a parent of N.T.K.

D.J.F. initiated a paternity action on December 28, 2002, which was 52 days after he received the notice to registered putative father. The district court dismissed D.J.F.'s paternity action because the court determined that D.J.F. failed to meet his burden of proving that he had good cause for not commencing his action within the 30–day period.

 Permitting a party to serve or file a pleading after a time limit has expired is within a trial court's discretion, and the trial court's decision will not be reversed unless there has been an abuse of discretion. *Coller v. Guardian Angels Roman Catholic Church of Chaska,* 294 N.W.2d 712, 715 (Minn.1980) ("A trial court's action permitting a party to serve or file a pleading after expiration of a time limit is discretionary and will not be reversed unless the discretion has been abused.").

Because Minn.Stat. § 259.49, subd. 1(b)(8)(iv), required D.J.F. to initiate a paternity action within 30 days of receipt of the fathers' adoption registry notice, "unless, for good cause shown, he is unable to do so within the 30 days," the good cause that D.J.F. needed to show is not simply a cause that made it difficult for him to initiate a paternity action, it is a cause that made him unable to initiate an action. "Unable" means "[l]acking the necessary power, authority, or means; not able; incapable." *The American Heritage Dictionary* 1940 (3rd ed. 1992). This means that to show good cause, D.J.F. needed to show that he was not able to initiate a paternity action within the 30–day period because he lacked the necessary power, authority, or

means to do so. *See* Minn.Stat. § 645.08(1) (2002) (in construing statutes, words and phrases are construed according to their common and approved usage).

However, this does not mean that D.J.F. needed to show that it was literally impossible for him to initiate the action within 30 days. In ascertaining the intention of the legislature, we may assume that the legislature does not intend a result that is unreasonable. Minn.Stat. § 645.17(1) (2002). It would be unreasonable to permit a failure to meet the 30-day filing requirement to be excused for good cause and then limit good cause to circumstances where it is impossible to meet the filing requirement. If the legislature had intended to allow a putative father more time to initiate a paternity action only when the putative father could show that it was impossible to initiate the action within 30 days, it would not have used the broader phrase "good cause."

D.J.F. argues that he had good cause for not initiating a paternity action within the 30-day period because the district court's wrongful denial of counsel and failure to correctly inform him about his rights created a substantial barrier to his exercising any of his rights as a parent. D.J.F. contends that he had a right to appointed counsel, and if he had been appointed counsel, he could have easily brought the paternity action within the 30-day period. But, apparently because D.J.F. was not aware of his statutory right to appointed counsel, no request for appointed counsel was presented to the court within the 30-day period.

The fathers'-adoption-registry statute provides for appointed counsel. "Upon proof of indigency, a putative father who has registered with the fathers' adoption registry, has received a notice to registered putative father, and has timely filed an intent to claim paternal rights form with the court administrator, must have counsel appointed at public expense." Minn.Stat. § 259.52, subd. 12 (2002). D.J.F. argues that this statutory requirement that he have counsel appointed implies that the district court had a duty to inform him about his right to appointed counsel because he could not exercise his right if he was not aware of it.

But we have found no provision in the fathers'-adoption-registry statute that requires the district court to inform a putative father about his rights under the statute. The statute provides that "[t]he commissioner of health may establish informational material and public service announcements necessary to implement" the fathers' adoption registry. Minn.Stat. § 259.52, subd. 1 (2002). But this provision is permissive. *See* Minn.Stat. 645.44, subd. 15 (2002) ("'May' is permissive."). It does not suggest that a putative father's lack of knowledge about his rights under the fathers'-adoption-registry statute is good cause for the putative father's failure to comply with the statute.

We recognize that initiating a paternity action without the services of an attorney would be a difficult task for most litigants, but failing to obtain an attorney is not good cause for failing to initiate the action within the 30-day statutory period. *See Heinsch v. Lot 27*, 399 N.W.2d 107, 109 (Minn.App.1987) (stating pro se litigants are generally held to same standards as attorneys; unfamiliarity with procedural rules is not good cause to excuse untimely action). Furthermore, the record demonstrates that D.J.F. was able to obtain counsel to initiate his action. D.J.F.'s mother testified that before the 30-day period expired, she called four or five lawyers who all required retainer fees before initiating an action, and she did not feel that there was anything further that she could have done to obtain legal advice,

other than have money. But D.J.F. obtained legal advice after the 30–day period expired, and he did not explain why the effort that he ultimately made to obtain counsel could not have been made within the 30–day period.

D.J.F. also argues that the forms that he received provided misleading and incomplete notice with respect to his parental rights. D.J.F. contends that the "Notice to Registered Putative Father and Notice of Jurisdiction" form that he received was not clear about the steps a father must take to preserve his rights and did not notify him that failing to bring a paternity action within 30 days would result in termination of his parental rights. But the form that D.J.F. received states that the mother of the child has indicated that she intends to place the child for adoption and that an adoption petition has been or will be filed. The form then states:

> If you claim to be the father of the child, you must bring a paternity action within 30 days. Fill out the "Intent to Claim Parental Rights." If you do not file an "Intent to Claim Parental Rights" form, whatever legal rights you have with respect to the child may be terminated. You will not be entitled to notice of adoption proceedings.

Although this form did not notify D.J.F. that failing to bring a paternity action within 30 days would result in termination of his parental rights, it did inform him that he must bring a paternity action within 30 days. Nothing in this form mislead D.J.F. with respect to the requirement that he bring a paternity action within 30 days.

D.J.F. also argues that the form indicates that he could lose his legal rights if he does not file the intent-to-claim-parental-rights form, but it does not mention how failure to timely file a paternity action will affect his rights, and the form seems to indicate that completing the intent-to-claim-parental-rights form will actually start a paternity action. But failing to inform D.J.F. about the consequences of not filing a timely paternity action was not misleading with respect to the need to bring a paternity action within 30 days, and any suggestion that completing the intent-to-claim-parental-rights form will actually start a paternity action was corrected by the intent-to-claim-parental-rights form that D.J.F. received. That form, which D.J.F. completed and filed with the court administrator, states:

> I further understand I must bring a paternity action under the Parentage Act (Minn.Stat. §§ 257.51 to 257.85) within 30 days of receiving the adoption registry notice, or, if the child is not yet born, within 30 days after the birth of the child, unless I am unable to do so. *I understand a paternity action is separate from the mailing of this form.*

(Emphasis added).

The forms that D.J.F. received explicitly informed him about the steps that he needed to take to preserve his rights, which included initiating a paternity action within 30 days. Although the forms did not specifically explain the consequences of failing to initiate a paternity action within 30 days, this omission could not have mislead D.J.F. about the need to initiate the action.

Finally, D.J.F. contends that during the time that he was trying to figure out how to preserve his parental rights, he was dealing with a significant eye injury that occurred just before the child's birth. However, the record demonstrates that this injury did not prevent D.J.F. from understanding that he needed to initiate a paternity action within the 30–day statutory period or in any way make him unable to initiate a paternity action.

## DECISION

The district court did not abuse its discretion when it determined that D.J.F. did not show good cause for failing to commence his paternity action within the 30-day period required under Minn.Stat. § 259.49, subd. 1(b)(8) (2002), and Minn. Stat. § 259.52, subd. 10 (2002). D.J.F. did not show that he lacked the necessary power, authority, or means to initiate a paternity action within the 30-day period.

**Affirmed.**