*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0090**

In re the Petition of:  C.G.M. and C.A.M. to Adopt J.J.H.M.

**Filed June 29, 2015
Affirmed
Worke, Judge**

Ramsey County District Court
File Nos. 62-AD-FA-14-29 and 62-AD-FA-10-98

Ryan L. Kaess, Kaess Law, LLC, St. Paul, Minnesota (for appellant)

Wright S. Walling, Stacia W. Driver, Brandon M. Zumwalt, Walling, Berg & Debele, P.A., Minneapolis, Minnesota (for respondents)

        Considered and decided by Worke, Presiding Judge; Cleary, Chief Judge; and Hooten, Judge.

## U N P U B L I S H E D   O P I N I O N

**WORKE**, Judge

        Appellant challenges the district court's determination that he failed to show good cause for not timely filing his paternity action.  We affirm.

## FACTS

        J.J.H.M. was born on February 19, 2014 in Akron, Ohio.  J.J.H.M.'s biological mother contacted respondents C.G.M. and C.A.M. while she was pregnant with J.J.H.M. to see if they were interested in adopting him because they had previously adopted

J.J.H.M.'s half-sister. With the mother's consent, J.J.H.M. was placed with respondents on February 22, 2014.

On February 24, 2014, while incarcerated in Ohio, appellant A.W. registered as J.J.H.M.'s putative father with the Ohio Putative Father Registry. Respondents petitioned to adopt J.J.H.M. in April 2014 and, after learning of A.W.'s registration, notified A.W. of the adoption proceedings on July 16. On July 28, A.W. filed an objection to the adoption proceedings and requested a continuance so that he could hire an attorney. The district court later rejected this motion for failure to pay the required filing fee.

On July 31, A.W. registered with the Minnesota Fathers' Adoption Registry. He also signed a "Notice to Registered Putative Father and Notice of Jurisdiction," which states in bold print: "If you claim to be the father of the child, you must bring a paternity action within 30 days." That same day, A.W. signed an "Intent to Claim Parental Rights," filed on August 4, stating that he understood he was required to bring a paternity action within 30 days of receiving the adoption registry notice and that "a paternity action is separate from the mailing of this form." On September 8, more than 30 days after receiving notice from respondents, A.W. filed a one-paragraph motion in respondents' adoption proceeding seeking to establish paternity.

On October 31, the district court determined that it had signed an improper in-forma-pauperis order on August 12 and that A.W. was entitled to court-appointed counsel. An attorney was appointed on November 5. A.W.'s attorney then filed a motion to establish paternity on December 3, arguing that an attorney was not appointed in a timely manner and that A.W.'s motion to establish paternity should be declared

timely. At the district court hearing, A.W.'s attorney admitted that J.J.H.M.'s biological mother was not served with the paternity motion as required.

On December 18, 2014, the district court determined that A.W. had not initiated a paternity action because he had not served J.J.H.M.'s mother and that neither his incarceration nor his lack of counsel constituted good cause for his failure to timely initiate an action. The district court therefore ordered that respondents could "move forward to finalization of their adoption of [J.J.H.M.] without further notice to, involvement by, or consent of [A.W.]"

A.W. appeals.

**D E C I S I O N**

A putative father is "a man who may be a child's father," but is not married to the child's mother and whose paternity has yet to be established. Minn. Stat. § 259.21, subd. 12 (2014). A putative father is entitled to notice of a petition to adopt if he:

> (i) is not entitled to notice under clauses (1) to (7);
> (ii) has registered with the fathers' adoption registry;
> (iii) after receiving a fathers' adoption registry notice, has timely filed an intent to retain parental rights with entry of appearance form under section 259.52; and
> (iv) within 30 days of receipt of the fathers' adoption registry notice has initiated a paternity action, unless, for good cause shown, he is unable to do so within 30 days; a paternity action must be initiated by the putative father in district court; application to the public authority for paternity establishment services does not constitute initiation of an action[.]

Minn. Stat. § 259.49, subd. 1(b)(8) (2014). "[A] putative father who does not meet the requirements of this statute . . . is not entitled to notice of the adoption proceedings, and

3

the child may be adopted without his consent even if he is a parent of the child." *T.D. v. A.K.*, 677 N.W.2d 110, 112 (Minn. App. 2004), *review denied* (Minn. June 29, 2004). A.W. does not claim that he is entitled to notice under any other provision of section 259.49, subdivision 1.

A putative father must register with the Minnesota Fathers' Adoption Registry within 30 days after the child's birth. Minn. Stat. § 259.52, subd. 7 (2014). The district court found that A.W.'s registration with the Ohio Putative Father Registry within 30 days of J.J.H.M.'s birth satisfied the statutory requirement. *But see Heidbreder v. Carton*, 645 N.W.2d 355, 376 n.16 (Minn. 2002) ("[R]egistration with another state's registry does not entitle a putative father to notice under Minn. Stat. §§ 259.49 or 259.52 [2000]."). Because both parties accept this finding and argue only that A.W.'s adoption petition was untimely, we will assume that A.W.'s Ohio registration satisfied section 259.52, subdivision 7.

Before a petition for adoption can be granted, the supervising agency must search the registry "to determine whether a putative father is registered." Minn. Stat. § 259.52, subd. 2 (2014). The agency or interested party must then serve any registered putative father with notice of the adoption petition, "an intent to claim parental rights form, a denial of paternity form, and a consent to adoption form." *Id.*, subd. 9 (2014). Here, the adoption agency searched the Ohio Putative Father Registry and respondents provided the required notice to A.W. on July 16. On July 31, the same day he registered with the Minnesota Fathers' Adoption Registry, A.W. signed the provided "Notice to Registered Putative Father and Notice of Jurisdiction" and "Intent to Claim Parental Rights." A.W.

4

properly filed these forms within 30 days of receipt of the notice from respondents. *See id.*, subd. 10 (2014).

But A.W. failed to initiate a paternity action within 30 days of the receipt of that same notice. *See* Minn. Stat. § 259.49, subd. 1(b)(8)(iv). A.W. filed a one-paragraph motion seeking to establish paternity on September 8 and a second motion on December 3. Both motions were filed more than 30 days after A.W. received notice of respondents' petition, and neither motion was served on J.J.H.M.'s biological mother.

Because A.W. failed to initiate a paternity action within the 30-day period following receipt of notice, he is not entitled to notice of the adoption petition unless he can show "good cause" for his delay. *See id.*; *T.D.*, 677 N.W.2d at 113. Although A.W. need not show that "it was literally impossible for him to initiate the action within 30 days," he must show that "he lacked the necessary power, authority, or means to do so." *T.D.*, 677 N.W.2d at 113-14. The district court concluded that A.W. had not shown good cause. "Permitting a party to serve or file a pleading after a time limit has expired is within a [district] court's discretion, and the [district] court's decision will not be reversed unless there has been an abuse of discretion." *Id.* at 113.

A.W. argues that he had good cause for failing to file his paternity action within the 30-day period because (1) he was incarcerated; (2) he was unable to hire counsel within that time period; (3) the district court failed to provide him the appropriate form; and (4) the district court failed to inform him of his right to an attorney.

*Incarceration*

A.W. has not shown that he lacked the "power, authority, or means" to timely initiate a paternity action while incarcerated. *Id.* at 113-14. He successfully registered himself as J.J.H.M.'s putative father in both Ohio and Minnesota and timely filed the "Notice to Registered Putative Father and Notice of Jurisdiction" and the "Intent to Claim Parental Rights" within 30 days of receiving notice of respondents' adoption petition. *See* Minn. Stat. § 259.52, subd. 10. A.W. also attempted to file a paternity action on September 8, and does not explain why his incarceration prevented him from filing this action sooner. *See T.D.*, 677 N.W.2d at 113 (explaining that good cause requires the putative father to show more than that it was simply difficult for him to file his paternity action). Finally, to the extent A.W. argues that he was unable to understand Minnesota's legal system while incarcerated in Ohio, he could have timely filed a paternity action in Ohio. *See Heidbreder*, 645 N.W.2d at 375 (explaining that the statute does not require the paternity action to be brought in Minnesota and that "a putative father may protect his interest in a child by commencing a paternity action in his own state"). We affirm the district court's determination that A.W.'s incarceration does not provide good cause for his failure to timely file a paternity action.

*Inability to hire counsel*

"Upon proof of indigency, a putative father who has registered with the fathers' adoption registry, has received a notice to registered putative father, and has timely filed an intent to claim paternal rights form with the court administrator, must have counsel appointed at public expense." Minn. Stat. § 259.52, subd. 12 (2014). By the time A.W.'s

6

motion to proceed in forma pauperis was granted on August 12, providing proof of A.W.'s indigency, A.W. had received notice of respondents' adoption petition and had timely filed the "Intent to Claim Parental Rights" form. A.W. therefore met the statutory criteria for an attorney to be provided at public expense. *See id.* But A.W. did not request an appointed attorney. In fact, A.W. requested a continuance so that he could hire his own attorney, continued to file documents with the district court pro se, and never suggested that he wanted an appointed attorney. Given this record, the district court did not err by not immediately appointing an attorney on August 12.

In *T.D.*, the putative father argued that "the district court's wrongful denial of counsel" provided good cause for his delay and that he could have filed his paternity action on time if he had been timely appointed an attorney. 677 N.W.2d at 114. We rejected the putative father's argument, explaining that, even though initiating a paternity action pro se could be difficult, "failing to obtain an attorney is not good cause for failing to initiate the action within the 30-day statutory period." *Id.* As in *T.D.*, A.W.'s failure to obtain an attorney or to request the district court to appoint one does not provide good cause for his failure to timely file a paternity action. A.W. successfully filed many documents with the district court pro se and did not lack the "power, authority, or means" to timely file a paternity action in Minnesota or Ohio. *See id.* at 113-14.

*Petition form*

A.W. also argues that the district court's failure to provide him with a paternity-action form provided good cause for his filing delay. But the statute does not require anyone to provide a putative father with a specific paternity-action form. *See* Minn. Stat.

7

§ 259.52, subd. 9 (requiring notice of the adoption petition, "an intent to claim parental rights form, a denial of paternity form, and a consent to adoption form" only). The statute does not even require the state to *create* a specific paternity-action form. *See id.*, subd. 11 (2014) (requiring the court administrator to develop only certain forms).

A.W. signed the "Notice to Registered Putative Father and Notice of Jurisdiction," which states in bold print: "If you claim to be the father of the child, you must bring a paternity action within 30 days." He also signed the "Intent to Claim Parental Rights," stating that he understood he was required to bring a paternity action within 30 days of receiving the adoption registry notice and that "a paternity action is separate from the mailing of this form." As we explained in *T.D.*, these forms properly informed A.W. that he needed to bring a paternity action within 30 days and did not mislead him about the need to timely initiate this action. 677 N.W.2d at 115. Because A.W. received all required forms, the lack of any paternity-action form did not provide good cause for his delay.

*Right to an attorney*

Finally, A.W. argues that the district court's failure to inform him of his right to an attorney provided good cause for his filing delay. We rejected this argument in *T.D.*, explaining that section 259.52 does not require the district court "to inform a putative father about his rights under the statute." *Id.* at 114. In addition, we stated that a putative father's lack of knowledge about his statutory rights does not provide good cause for his failure to comply with statutory requirements. *Id.* As in *T.D.*, any failure to inform A.W. regarding his right to an attorney does not provide good cause for A.W.'s filing delay.

8

We conclude that A.W. has failed to show good cause for his failure to file a paternity action within the 30-day statutory time period. As a result, he is not entitled to notice of the hearing on the adoption petition and his consent to J.J.H.M.'s adoption is not required. The district court did not abuse its discretion in ordering respondents to proceed with the adoption without A.W.'s involvement or consent.

**Affirmed.**